Good morning, and may it please the Court, my name is Stephan Love, and I'm here on behalf of Banc of California, and I'll be reserving three minutes for rebuttal, please. This Court needs to reverse the entry of summary judgment for federal. First, because the control agreement that had a forgery in this case was a security agreement, as this policy defines it. And second, because Banc's loss here resulted directly from giving the loan to McDonald, exactly as the policy requires. And if the Court reaches those two issues, it should reverse summary judgment for federal. So let's start with the control agreement. It's a security agreement under the policy. The argument there is very simple. The policy says a security agreement is an agreement meeting two elements. First, it creates an interest in personal property or fixtures. The control agreement does that. It gives to Banc the power to control McDonald's checking account. That's an interest in that property, and the control agreement created it. Second, the second element of a security agreement is that it does this, and it also secures payment or performance of an obligation. The control agreement, as a practical matter, secures repayment of this loan. It gives Banc the power to collect if McDonald won't pay. So on its face, on its own, the control agreement here, the forged document, satisfies that definition. And the District Court got that wrong and needs to be reversed on that issue. Now, there's another path by which the Court could reach the same conclusion, and that's to look at- I'm sorry, before you go, if a security agreement is not perfected, is it still a security agreement, a security interest? It could be. The policy defines a security agreement, not with reference to attachment or perfection, the language that Your Honor's referring to. It's more general, and so the Court applies it in exactly the language it's cast. An interest in property is what a security agreement creates, not necessarily a security interest, not necessarily the perfection of a security interest. Any interest will do. So it's broader than UCC? It is broader. Terms we usually think about security interests. Yes, it is. It's definitely broader. And the Seventh Circuit has held as much, has actually held that a possessory interest, when a document creates a possessory interest, for example, it satisfies this element of the policy, which had the same language. And so that's your lead, right, for us to follow the Seventh Circuit? Yes. And the DIC versus RLI? Yes, FDIC, RLI, insurance company. And to find that this control agreement's standing alone is a security agreement within the meaning of the policy? Exactly. And so the District Court's error here was exactly what, in your view? The District Court read into the policy language that a security agreement creates a security interest, or in the vocabulary Judge Parker's referring to, you might say attaches a security interest. And here we have a pledge agreement also, which attaches a security interest, or which in its own language, I believe, even creates a security interest. The District Court saw that and thought the policy was limited to creation of a security interest. The policy doesn't say security interest. It says creates an interest. And here it's an interest in personal property? Yes. It's the power to control that property. By force of that control agreement, the account was frozen as to McDonald's control of it, and that control was turned over to bank. And so that gives bank an actionable interest in that personal property. Does the pledge agreement fall under the definition of a security agreement? I believe it does. That's not an issue here, but... So you're saying either one would fall within security agreement, pledge or control? Yes, I believe they both would. The pledge agreement creates a security interest in this property, so that also would be creating an interest. And that's what federal contends, am I correct? I think that's right. That the pledge agreement pays a security interest in the Northern Trust account. Is the only loan document that can qualify as a security agreement? Is that what federal is saying? I'll let them speak for themselves. That's how I read them, to make the same mistake as the District Court and suggest that this policy covers only documents that create, i.e. attach, a security interest. The policy doesn't give any support for that. And even if we were to try to limit to the kind of UCC sphere, that also wouldn't support that conclusion. Because I think everyone agrees that the control agreement does perfect a security interest in this bank account. And it does that because it's the only real way, as a practical matter, that bank is going to collect on this loan. If McDonald defaults, bank is going to have to go to Northern Trust and say, we need this money. And Northern Trust is not going to care about a pledge agreement between McDonald and bank. Northern Trust is going to care about a control agreement. So perfecting the security agreement is essential to, or I should say perfecting the security interest, is essential to giving any practical power to bank within this transaction. We understand, or I understand, that the principles driving the basic interpretation of the policy, or that any ambiguities have to be resolved in your client's favor. The argument is made that the contract terms were the result of a negotiation between the insurance industry, if you will, and banks. Does that change the application of this rule, in your view? It would if we had a record on what portion of this policy precisely matches the outcome of that negotiation, or that insurance industry decision-making process. We don't. We know that this policy was based on that, but we don't know any deviations, and they're not in the record. But I would also say there's no ambiguity in this policy, at least as to these issues. So we don't need to even decide whether that rule about resolving ambiguity in favor of the insured applies or not. On its face, the policy says a security agreement creates an interest in personal property. That's not ambiguous. Is the right to control an interest? Yes. So we don't even need to seek recourse to that rule. If we do have to, then we would want to resolve ambiguities in banks' favor. But the rule doesn't need to come up at all. I'll turn to the second issue that the court should reach to reverse summary judgment for federal, which is that banks' loss here resulted directly from giving this loan to McDonald. The policy language here is equally clear. It defines a covered loss as one resulting directly from bank having, in good faith, given value, extended credit, or any of a number of other kind of transactions, acquired something, and so on. So the policy links the loss with this phrase resulting directly to the transaction that the bank engages in, in this case to the act of extending credit or giving value to McDonald. That's where the policy draws that connection. And here, the causal chain, the resulting directly chain, is perfectly obvious. Bank gave this loan. McDonald defaulted. And the failure to pay back the loan is bank's loss. So that loss resulted directly from giving this loan. As far as that phrase resulting directly, that's all the policy demands. Federal's argument, as I read it at least, is resulting directly actually needs to link the loss to the forgery. The loss needs to result directly from the forgery itself. That's a different policy from what we have here. And it's useful, if your honors have it in front of you, to actually look at the policy as it's cast, because the formatting here places this phrase resulting directly like seven lines above, eight lines above, all these embedded sub-A's, sub-1's, Romanettes 1 and 2 and so on. We have resulting directly way up here. And then halfway down the page, we have there's a forgery. And there's nothing reading this policy to suggest the loss results directly from the forgery as a requirement for coverage. The Seventh Circuit has, again, correctly addressed this issue as well, but confronted by an argument exactly like Federal's here. The bond does not say the bond is the policy. And I'm quoting from that case, FDIC, RLI, insurance company. The bond does not say that the loss must have resulted directly from a forgery. That's Federal's position, but it's not in the policy. It says that the loss must have resulted directly from reliance on a security agreement here that contained a forgery. So whether the document contains a forgery is just an objective condition. Was there a forgery on this document on which the bank relied? Yes, there was in the case that the Seventh Circuit confronted and in the case here. So there was a forgery on this document. Check that box. Nobody's disputing that. And furthermore, stepping back, the loss resulted from the loan. And then we also ask, although this isn't precisely the issue here, was the loan in reliance on this document, security agreement? Yes, it was. And that point is not disputed. So with those two issues going banks' way, the court needs to reverse summary judgment for Federal. And I will reserve the balance of my time. Do you think you're entitled to summary judgment on this record? That would require the court to reach a third issue, the question of whether bank gave this loan in good faith. The answer is yes, bank did give the loan in good faith. And because I'm running low on time and I do want to save some time for rebuttal, I'll reserve time on that. I can come back to that in rebuttal. But the question of good faith is not an issue. Did the district court review that? The district court did not reach it. Wouldn't we want the district court to review that in the first instance? I'll leave that to you. On the record here, you don't need to. I see. Is the record on that issue complete? It's very developed. We've got lots of depo testimony. We've got lots of documents. Thank you. Thank you. Good morning, Your Honors. Mitch Tilner for Appellee Federal Insurance Company. Let me begin with what I think is the easiest ground on which this court can affirm the summary judgment. And that's the fictitious collateral rule. And I say it's the easiest ground because we have a Ninth Circuit opinion that addresses this issue. The opinion is on point. Now, I recognize it's not published, but it is citable under this court's rules, and it's very persuasive for a couple of reasons. It's consistent with the majority view nationwide on this issue. It's also been cited by district courts in this circuit and elsewhere and by at least one state appellate court. So, notably, the bank never mentioned this case. It's called Bank of Bozeman v. Bank Insure from this court in 2010. We briefed it at length. Notably, in their reply, the bank never mentioned it, and I noticed counsel didn't mention it again this morning. So we don't need to look at the Seventh Circuit. We need to look at the Ninth Circuit. And in Bozeman, the banks extended credit, taking as collateral corporate guarantees and stock certificates in an airline that the borrower claimed to be developing. The guarantees and certificates were fraudulent in two respects. They were forged, and they were worthless because there was no airline. It existed only on paper. So that's like our case. The collateral never existed in our case. When the borrower defaulted in the Bozeman case, the bank sued for coverage under a bond with coverage language virtually identical to the bond here. The district court granted summary judgment to the bonding company. The court said the loss did not result directly from the bank's reliance on the forged security, but from the fact that the collateral was worthless from the start. Even if the signature had been genuine, the bank would have suffered the same loss. This court affirmed. This court rejected the Seventh Circuit approach. We know that because Judge Thomas in dissent opened his dissent by saying, I would follow the Seventh Circuit. The majority did not. The majority followed the majority rule nationwide and said, when you have worthless or fictitious collateral from the outset, your loss is not attributable to the forgery. Your loss is attributable to the falsity. The lies in the misrepresentations in the documentation. How do you respond to their argument that then the forgery insurance coverage would be illusory? Put another way, are there any instances where you would cover forgery where the forgery didn't involve, say, a collateral? Yes, Your Honor. If the forgery itself defeats the collateral, for example, if there's a guarantee provided to the bank and that's the collateral, but the guarantee is forged, well, the forgery defeats the collateral at the inception of the loan, so that would be an example. But in our case, the control agreement was not collateral. The pledge agreement is that said to the bank, you have an interest in my account. That's the collateral. Now, if an account had a joint tenant of two owners, for example, and the borrower forged the co-tenant's signature on the pledge agreement, okay, that's a security agreement. That bears a forgery. So that would be a different case. Now, Bank argues, well, we loaned the money because we relied on the control agreement. This court in Bozeman rejected that argument. That's a but-for. That's a tort argument. But for something earlier in the chain of causation, we wouldn't have suffered the loss. That's a tort argument. This court didn't follow that. This court said the loss must result directly from the forged document, and when it results from the fact that there never was collateral from the beginning, it was fictitious, that's where the loss results directly from. You're two or three steps down the road, and I want you to help me understand what's going on here because you're losing me. As I read the terms of the policy, this loss is covered. Your Honor, I'm tracking this court's opinion in Bank of Bozeman, and I'm tracking the majority. Okay. The policy defines security agreement as an agreement which creates an interest in personal property and which secures payment. And this is one of the types of documents that's specifically recognized. Why doesn't this agreement fit this definition? Thank you, Your Honor. Your Honor, I should mention that I'm focusing right now on the other element that fails in their case, and that is the bond. Yeah, well, you can do that later. Just answer my question. Okay. On your question, Your Honor, this bond, as was noted, was negotiated by sophisticated representatives of the bonding industry and the banking industry. I'm not at the drafting history. I'm just at the language. Yes, Your Honor. A security agreement must create an interest in personal property. That's what happens here. Well, that's not true, Your Honor. Help me understand. They cite Black's Law Dictionary for what an interest is, and if you read the definition they cite, it says creates a share in property, creates a claim or right to property. That didn't happen here. The control agreement, the pledge agreement, gave the bank a right to the account. The control agreement did not. The control agreement said to the bank, Northern Trust will respect your instructions if and when there's a default, we won't respect your instructions, and we'll dispose of the money as you instruct us. That's the control agreement. The pledge agreement specifically says I, McDonnell, hereby grant you, bank, a security interest in my fictitious account. That's the security agreement. And as I was saying, this bond was drafted to specifically narrow the types of documents on which a forgery would trigger coverage, and they did not list bank account control agreements. Even though these negotiators were steeped in this issue and sophisticated negotiators, they did not mention control agreements. And this result is consistent with the purpose of the bond. Let's keep in mind, what is the purpose of this bond? The purpose, as many cases tell us, is to protect the bank if the document they're presented with is not genuine or authentic. And the loss results from the example I gave, a guarantee that's forged. It's not a genuine document. A deed of trust with a forged signature is not genuine. The bond is not designed to protect the bank against the risk that the borrower will default and there won't be collateral to collect the loan from. That's a credit risk. This court in Bozeman said this bond is not a policy of credit insurance. So what you're telling us is if you have a forgery policy under your company's view, you don't really have a forgery policy. No, Your Honor, you do have a forgery policy. A couple of examples that I gave a few minutes ago. If, for example, the borrower presents a deed of trust to real property to secure the loan, and that deed bears a forgery, well, there's a forged deed. The collateral fails instantly, and the bank has no way to protect itself against a forged deed. The bank can protect itself against fictitious collateral. In this case, they could have called Northern Trust, and instead of giving up when no one returned the call, they could have persisted. They could have talked to someone at Northern Trust. That's another issue. That's good faith. Well, Your Honor, that goes to the purpose of the bond.  default, and that the collateral may not be what they think it is. They can protect themselves by investigating. The bond is designed to protect against inauthentic documents or non-genuine documents against which the bank has really no way to protect itself. That's what the bond is designed to deal with. So if this panel agrees with Bozeman, as I think it should, it doesn't need to get into whether the control agreement created an interest or what kind of interest had to be created. It doesn't need to get to that issue because the summary judgment was proper on the fictitious collateral doctrine. But if the court disagrees with Bozeman and wants to consider the security agreement issue, as I've mentioned. Well, if Bozeman is the unpublished decision, I just want to be. That's correct. 2010, let me give the court the site. It's in our brief. It's 404 Fed Appendix 117, 2010, 9th Circuit. But the district court didn't reach that issue either, correct? The district court followed the 7th Circuit and didn't mention Bozeman. Right. Yes. So. Yeah, the 7th Circuit, by the way, that's a minority. I mean, good faith, the district court didn't reach any of the other elements that were discussed. That is correct. It just ruled on this and said that this element was not met, disagreeing with the 7th Circuit, correct? The district court granted summary judgment because it found the control agreement was not a security agreement within the list of eight. So it granted summary judgment for that reason. It goes on to consider this fictitious collateral issue. It didn't need to, but it goes on to consider it, and it finds the 7th Circuit persuasive without recognizing that there was this 9th Circuit opinion. If we find that it is the security agreement, do you lose? No, Your Honor, we don't lose because there are two alternative grounds for affirmance here. One is the fictitious collateral analysis. The other is the security agreement, which counsel devoted most of his time to. So there are two alternative ways to affirm, and I'm suggesting the easier way for this court is to just follow the Bozeman opinion from 2010, okay? Keep calling it an opinion. I mean, it's an unpublished decision. That is correct, Your Honor, and under this court's rules, it's not binding on this panel. It is, however, citable, and as I've explained, it's very persuasive. Courts around the country agree with it, and in fact, some have cited it. District courts elsewhere and the Minnesota Court of Appeal have cited it as well. So obviously, these other jurisdictions find it well-reasoned and persuasive, and there are many published opinions going the same way, although not in the 9th Circuit. And we would split with the 7th Circuit if we accepted your proposal here? That is what the court did in 2010 in Bozeman, and, yes, if the court ruled our way, it would need to distinguish the 7th Circuit, and in fact, you can distinguish the 7th Circuit. The leading case there, Bank of Manitowoc, the leading case in the 7th Circuit, involved a bond with different coverage language. The bond there said loss by reason of reliance on a forgery. It didn't say loss resulting directly from reliance on a forgery, and the court itself said you need to look at the bond language very carefully in these cases because slight variations can produce different results, and that explains the 7th Circuit case. With respect to security agreement, which is the alternative ground for affirmance, the pledge agreement, not the control agreement, was the security agreement in this transaction, and the control agreement by its terms said this is to perfect the interest McDonald conveyed to the bank through the pledge agreement, and that's how they understood the control agreement. That's how the parties understood it. That's what the bank told McDonald. That's what the bank told Federal. The bank said the pledge agreement created an interest. The control agreement perfected it, and that's what the bank told the district court in its motion for partial summary judgment. Quote, in the pledge agreement, Ms. McDonald granted bank a security interest in the Northern Trust account to secure repayment of the promissory note. That's what they told everyone. On appeal now, they're arguing for the first time that these three documents can be combined to form a security agreement. Do you want to make a concluding statement? Yes, Your Honor. Let me emphasize that there are two alternative grounds for affirmance. One is supported by the unpublished opinion from this court as well as the majority of published opinions on the subject elsewhere, so we would urge the court to affirm the summary judgment on the ground that this bond is not credit and insurance. It doesn't cover bad debts or fictitious collateral. Thank you, Mr. Tilner. Thank you. Thank you. I'm struck that neither Bank of Bozeman nor my opponent grounds their conclusion in the language of the policy. This is the holding of Bank of Bozeman. Coverage is denied because the losses did not result directly from forgery. The policy doesn't say losses result directly from forgery. It's an invented requirement. It's one that Federal wished they had drafted, but they didn't. I also want to clarify one point that might not have been totally clear. The Seventh Circuit has two published decisions on this issue. The one that we rely on more, FDIC v. RLI Insurance Company, the policy there has exactly the same relevant language as in this case. There's a previous Seventh Circuit decision, First National Bank of Manitowoc, which has slightly different policy language, but the FDIC case is squarely on point as to the language. So your view on the fictitious collateral rule is what? Do we need to reach that if we agree with you? I don't think so because there's no support for that rule in the policy language. The clearest path here is to say here's what the policy requires. The loss results directly from the transaction. The transaction met the elements that are required of it, therefore coverage. And so the fictitious collateral rule, if it needs to be addressed at all, the way to address it is no support from the language, and it ends up with a fictitious policy because I believe, as Judge Parker noted, or it might have been, I honestly can't remember, but one of your honors noted that the policy becomes illusory because it would cover only a forgery where the forger has good collateral. And that's not your typical case. People commit forgery because they don't have good collateral to put up. My opponent here offered some kind of unicorn examples where, oh, no, there'd still be coverage here in this other unusual case. Bank of California got a forgery policy to cover a typical case of forgery. That's what we have here. Do we know from the Bozeman, I mean, it was an unpublished opinion, so the facts are pretty sparse. Do we know the exact language that was in Bozeman? In relevant part, the language is the same as at issue here. Okay, so does it use the same language in reliance on forgery or does it say caused directly from forgery? It says it has the same gap and it has the same in reliance, on one of the following list of documents which bears a forgery, as far as you can tell from the disposition. And so if there aren't any final questions, I would again ask this Court to reverse some of the judgments of federal. Thank you very much. Thank you both for your oral argument presentations. The case of Bank of California National Association versus Federal Insurance Company is now submitted. The last case on our docket, Catherine Trinh, Kevin Wong versus Catherine Trinh, is submitted on the briefs. Isn't that stayed? Stayed or submitted on the briefs? Submitted, I think they may have stayed. I think it's submitted, but I'll look and see whether it's stayed. That concludes our docket for today. And we are adjourned. Thank you very much. All rise. This Court for this session stands adjourned. Court is adjourned.
judges: MURGUIA, Parker, LEE